

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-1621-10

**RAYMOND DEAN LACKEY, Appellant**

**v.**

**THE STATE OF TEXAS**

ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
FANNIN COUNTY

PRICE, J., delivered the opinion of the Court in which WOMACK, JOHNSON, COCHRAN, and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion. HERVEY, J., filed a dissenting opinion in which MEYERS and KEASLER, JJ., joined.

## O P I N I O N

Pursuant to a negotiated plea of guilty, the appellant was convicted of the offense of driving while intoxicated and his punishment assessed at nine months' confinement, probated for eighteen months, and a fine of $1000.[1] In a published opinion, the Sixth Court of

---

[1] Because the appellant had a prior conviction for the same offense, he was punished as a Class A misdemeanant. TEX. PENAL CODE §§ 49.04(a), 49.09(a).

Appeals reversed the appellant's conviction, holding that the constitutional county judge, Eileen Cox, erred in appointing a local municipal-court judge, John Skotnik, to preside in her place over the appellant's motion to suppress hearing and that she should have granted his later request that she conduct another suppression hearing.[2]  The court of appeals held that it was of no moment that the appellant failed to object to the qualifications of the municipal-court judge at the time of the suppression hearing itself because Skotnik's orders denying the motions to suppress were void and could be challenged for the first time on appeal.[3]  We granted the State Prosecuting Attorney's (SPA) petition for discretionary review to address (1) whether the court of appeals was correct to hold the orders on the motions to suppress void, not voidable, and (2) whether the appellant forfeited any claim on appeal by failing to challenge the municipal-court judge's qualifications during the hearing.  Finding our resolution of the second question dispositive, we need not address the first.  We hold that it does not matter whether the municipal-court judge's orders denying the appellant's motions to suppress were void because the appellant adequately preserved his complaint for appeal.

## FACTS AND PROCEDURAL POSTURE

### At Trial

In an information filed on October 15, 2008, the appellant was charged with the

---

[2] *Lackey v. State*, 322 S.W.3d 863, 869 (Tex. App.—Texarkana 2010).

[3] *Id*. at 867-69.

offense of driving while intoxicated, alleged to have been committed in June of the same year. In June of 2009, the appellant filed two motions to suppress challenging the admissibility of oral statements and tangible evidence that he claimed were the product of an illegal arrest. A pre-trial hearing was scheduled for September 30, 2009, but the State sought and obtained a continuance until October 28th. For reasons not revealed by the record, the hearing did not take place on October 28th as re-scheduled, but the clerk's record does contain an order, signed by Eileen Cox in her capacity as Fannin County Judge, and dated October 28th, appointing attorney John Skotnik, a municipal-court judge, "to act for me as County Judge involving any mental or chemical dependency, criminal, juvenile, civil or probate matter."[4] The record does not show that the appellant was ever notified of this order of appointment by service of process or otherwise. Although there is no court reporter's record of the proceedings, the docket sheet reflects that a hearing was conducted on December 2, 2009, over which Skotnik presided, after which he entered written orders that are in the clerk's record, denying each of the appellant's motions to suppress. The parties have agreed for purposes of appeal that the appellant failed to voice any objection to Skotnik's qualifications to sit and rule in Judge Cox's place during the December 2nd suppression hearing.

---

[4] The order in its entirety reads: "In my absence from the office on October 26, 2009, I hereby appoint the Honorable JOHN SKOTNIK, attorney at law, to act for me as County Judge involving any mental or chemical dependency, criminal, juvenile, civil or probate matter. Dated this 28th of October, 2009." The order is signed by both Judge Cox and by Skotnik.

However, on March 3, 2010, the appellant filed a motion to set aside Skotnik's orders denying his motions to suppress, asking Judge Cox to conduct a new suppression hearing and make new rulings. In this motion, the appellant complained that the appointment of Skotnik to preside over his suppression hearing was "fundamental error" because "Mr. Skotnik, although a licensed attorney, is not and never has been an elected County or State judge in Texas. He is not a retired judge for the State of Texas." The appellant set out the text of Section 26.022 of the Texas Government Code, complaining that he had no prior notice of the appointment and that no attempt was made to have the parties agree on Skotnik's appointment beforehand, both of which are required by the statute.[5] On March 8, 2010,

---

[5] TEX. GOV'T CODE § 26.022. This provision applies in counties for which there is no statutory county court or probate court and therefore "all duties of the county court devolve on the county judge." *Id*. § 26.021. This was the case in Fannin County, the parties agree, at the time of the applicant's trial, and the court of appeals so concluded. *Lackey*, *supra*, at 865. Section 26.022 reads, in its entirety:

**§ 26.022.      Appointment for Particular Matters**

 (a)  The county judge for good cause may at any time appoint a visiting judge with respect to any pending civil or criminal matter.

 (b)  The visiting judge may be appointed on motion of the court or on motion of any counsel of record in the matter. Each counsel of record is entitled to notice and hearing on the matter.

 ©  To be appointed a visiting judge, a person must be agreed on by the counsels of record, if the counsels are able to agree.

 (d)  The motion for appointment and the order appointing the visiting judge shall be noted on the docket. A written motion or order may be filed among the papers of the case.

Judge Cox convened a hearing on the appellant's motion. At this hearing, the appellant once again complained of a lack of notice of Skotnik's appointment and a lack of agreement by the parties. He additionally complained that no showing of good cause was made. At this point, Judge Cox interjected to reveal that she had entered a *second* order appointing Skotnik, which she characterized as a "general appointment" order, but which she caused to be "put in the file" only after she saw the appellant's motion for a new suppression hearing.[6] Later at the hearing, Judge Cox elaborated that she had been "out with pneumonia" at the time of the appellant's suppression hearing, and that she had appointed Skotnik on her own "oral motion." Only after Judge Cox had already expressly denied the appellant's motion for a new suppression hearing, both orally on the record and by way of an express written order, did the State remark at the hearing that its "objection" to the appellant's motion was "mainly that [the appellant] didn't object to [Skotnik's appointment] at the time of the hearing. As soon as Skotnik came on, he made no objection on the record to Skotnik hearing the case."

Immediately after this hearing, the appellant pled guilty pursuant to a negotiated plea

----

(e) The visiting judge has the powers of the county judge in relation to the matter involved.

[6]

 Identical to the earlier order except for the relevant dates, this second appointment order reads: "In my absence from the office on December 2, 2009, I hereby appoint the Honorable JOHN SKOTNIK, attorney at law, to act for me as County Judge involving any mental or chemical dependency, criminal, juvenile, civil or probate matters. Dated this 2nd day of December, 2009." It is likewise signed by Judge Cox and by Skotnik. If this was indeed a "general" order of appointment, then the appointment order dated October 28th was also a "general" order of appointment, since they are substantively the same.

bargain. As an express part of the plea agreement, the appellant "Reserve[d] the Right to Appeal Pretrial Matter Raised and Ruled on Prior to Trial." The trial court duly certified the appellant's right to appeal from all "matters . . . raised by written motion filed and ruled on before trial and not withdrawn or waived[.]"[7]

## On Direct Appeal

On appeal, in response to Judge Cox's assertion on the record that the December 2nd order appointing Skotnik had been of a "general" character, necessitated by her illness, the appellant argued that the order was invalid because it did not conform to Section 26.023 of the Government Code.[8] Unlike Section 26.022, which authorizes a county court to appoint a visiting judge to preside over a *particular* matter, Section 26.023 authorizes the county

---

[7]
   *See* TEX. R. APP. P. 25.2(a)(2), (d).

[8]
   TEX. GOV'T CODE § 26.023. This provision also applies to the constitutional county court in Fannin County. *Id*. § 26.021. Section 26.023 reads, in its entirety:

**§ 26.023.      Appointment for Absence of Judge**

(a)  The county judge may appoint a retired judge or a constitutional county judge from another county as a visiting judge when the county judge is absent from the county or absent because of physical incapacity.

(b)  The visiting judge shall sit in all matters that are docketed on any of the county court's dockets and has the powers of the county judge in relation to the matter involved.

©  Without the consent of the commissioner's court, visiting judges appointed under this section may not sit for more than 15 working days during a calendar year.

(d)  The order appointing the visiting judge shall be noted in the docket of the court.

court to make a more global appointment—that is, to "sit in all matters that are docketed on any of the county court's dockets."[9] And indeed, the tenor of Judge Cox's "general" orders, both of October 28th and December 2nd, conform more to Section 26.023 than to Section 26.022. For this reason, the appellant fashioned his appellate challenge to those deficiencies he perceived to be inherent in Judge Cox's December 2nd order as measured by the criteria of Section 26.023.

Among other deficiencies, the appellant argued that the record shows that Skotnik was not qualified to act as a county court judge in Fannin County because he is neither a retired judge of any rank nor a constitutional county judge from another county, as required by Section 26.023(a). He argued that the court of appeals could reach this issue, even though he failed to object to Skotnik's appointment at the suppression hearing, because the actions of a "putative judge" who is statutorily unqualified for the office are a nullity. For its part, the State continued to argue that Section 26.022 is the applicable statute, that Skotnik was qualified under Section 26.022, and that the appellant failed to preserve error with respect to any procedural deficiencies in Skotnik's appointment under Section 26.022 by failing to raise them at the time of the December 2nd suppression hearing.

In addressing these issues, the court of appeals turned first to the question of which statute governed Skotnik's appointment. The court of appeals held that, given the tenor of,

---

[9] *Id*. § 26.023(b).

and the circumstances giving rise to, Judge Cox's December 2nd appointment order, Section 26.023 controls.[10] Turning next to the State's contention that the appellant had procedurally defaulted his claim by failing to challenge Skotnik's appointment at the time of the suppression hearing, the court of appeals conceded that such an argument would be valid with respect to any "procedural defects" in the appointment process.[11] Nevertheless, the appellant raised more than just "procedural irregularities" with respect to Skotnik's appointment; he also challenged Skotnik's eligibility under Section 26.023 to assume Judge Cox's duties as county court judge.[12] The court of appeals agreed with the appellant that, because Skotnik was neither a retired judge nor a constitutional county judge from another county, Judge Cox lacked the statutory authority to appoint him.[13] Such a putative judge has no authority to act, and his putative actions are a nullity, which may be attacked for the first time on appeal.[14] "Accordingly," the court of appeals concluded, "the trial court erred in

---

[10] *Lackey*, *supra*, at 867 ("In light of the language of the order, the court's characterization of same as a 'general appointment,' Judge Cox's absence from the bench due to physical incapacity, and the language of the statutory provisions in question, we conclude that Section 26.023 of the Texas Government Code governs the appointment at issue.").

[11] *Id*. at 868. For this proposition, the court of appeals aptly cited *Miller v. State*, 866 S.W.2d 243, 245-46 (Tex. Crim. App. 1993).

[12] *Id*.

[13] *Id*. at 867.

[14] *Id*. at 869.

denying Lackey's motion to set aside the void orders and in failing to grant a new hearing on the suppression motions."[15]  The court of appeals therefore reversed the appellant's conviction and remanded the cause to the trial court for further proceedings consistent with its opinion, including a new suppression hearing.[16]

## On Petition for Discretionary Review

The SPA does not take issue with the court of appeals's holdings, either that  Section 26.023 is the controlling statute, or that Skotnik lacked the statutory qualifications under that provision to preside in Judge Cox's court.[17]  Instead, the SPA challenges the court of appeals's reliance upon this Court's opinion in *Davis v. State* for the proposition that the actions of a putative judge whose appointment was made without statutory authority are a nullity.[18]  Pointing to a pair of more recent opinions of this Court,[19] the SPA argues that the

---

[15]

*Id*.

[16]

*Id*.

[17]

*See* SPA's Brief on the Merits, at 3, n.1 ("We do not disagree with the Court of Appeals' holding that §26.023 was the applicable statute under the circumstances in this case.  Our argument is that a judge's lack of qualification under the statute does not render the judgment void; therefore, a timely objection is required to preserve error.").

[18]

*See Lackey*, *supra*, at 868 ("*Davis* enumerates a number of circumstances in which the action of the trial court, done without authority, is void.").  In *Davis*, after first observing that the lack of *authority* in a presiding judge does not equate to a lack of *jurisdiction* in the court itself ("jurisdiction or judicial power is vested in courts, not individuals"), we nevertheless went on to remark:

> This is not to say that judicial functions performed by one without any authority to act
> may not be void.  For example, if the trial judge is related to a party by affinity or

court of appeals's reliance upon what it characterizes as dicta in *Davis* was misguided, that

> consanguinity or had formerly prosecuted the same case he now presides over, he is constitutionally disqualified under Article V, Section 11 [of the Texas Constitution]. See *Ex parte Vivier*, 699 S.W.2d 862 (Tex.Cr.App.1985); *Ex parte Washington*, 442 S.W.2d 391 (Tex.Cr.App.1969). In *French v. State*, 572 S.W.2d 934 (Tex.Cr.App. 1978)(on second motion for rehearing), a temporary appointed municipal judge's actions were held void because he had not taken the oath of office as required for elected judges and appointed officers by Article XVI, Section 1, Texas Constitution. Therefore, as opposed to being disqualified from acting in a particular case, the special judge in *French* was not qualified because he had not taken the constitutionally required oath. See also *Herrod v. State*, 650 S.W.2d 814 (Tex.Cr.App.1983)(retired judge was not authorized to preside because record failed to show: an order of assignment from the administrative judge, that the duly elected judge was disabled, and that the retired judge had executed the bond and taken the oath of office). . . .

> Common to all of the above cases which hold the conviction void is the constitutional or statutory *disqualification* or lack of *qualification* of the judge. If the putative judge did not possess the prescribed qualifications to act in that capacity or he was disqualified from a particular case because of his relationship to the case or a party, he had no authority over the proceedings and his actions were a nullity.

956 S.W.2d 555, 559 (Tex. Crim. App. 1997).

[19]

In *Ex parte Richardson*, 201 S.W.3d 712 (Tex. Crim. App. 2006), the Court declined to grant post-conviction habeas corpus relief in the case of an applicant who waited until post-conviction proceedings to claim that the judge who had presided over his probation-revocation proceedings had prosecuted him at his original trial, rendering him disqualified under Article V, Section 11, of the Texas Constitution and Article 30.01 of the Texas Code of Criminal Procedure. Characterizing the above-quoted passage from *Davis* as "*dicta*," and observing that "whether the judge's lack of authority necessarily renders his actions a nullity that is correctable on habeas corpus is an issue ripe for re-examination[,]" *Richardson*, *supra*, at 713, we overruled an earlier opinion granting habeas relief, *Ex parte Miller*, 696 S.W.2d 908 (Tex. Crim. App. 1985). Noting that Richardson was aware at the time of the revocation hearing that the judge had earlier prosecuted him, we held that the applicant should have registered his complaint at that time.

In *Whitehead v. State*, 273 S.W.3d 285 (Tex. Crim. App. 2008), the appellant raised the issue of the disqualification of his trial attorney under Article 30.01 for the first time on appeal. Because the State did not question our line of cases holding that a judge's disqualification may be raised for the first time on appeal, we did not address that question in the course of resolving the appellant's petition for discretionary review, though a majority of our judges noted that it is a question that is, indeed, ripe for reconsideration. *Id*. at 286 n.3; *id*. at 290 (Johnson, J., joined by Cochran, J., concurring); *id*. at 291 (Keller, P.J., joined by Keasler and Hervey, JJ., dissenting).

Skotnik's lack of qualification to serve in Judge Cox's court did not deprive the county court itself of subject-matter jurisdiction, and that, absent such a jurisdictional defect, the court of appeals erred to hold that Skotnik's statutorily unauthorized actions were a nullity that need not be challenged at the trial court level to be vindicated on appeal. In her first ground for review, the SPA asks us now to overrule the line of cases that *Davis* cited in its dicta, and to hold instead that the lack of *authority* in one purporting to act in the capacity as a judge does not render his act *void* so long as the court for which he purports to act retains *jurisdiction*. In her second ground for review, the SPA urges us to hold that the appellant's complaint that Skotnik lacked the *authority* to act in the capacity as county court judge was procedurally defaulted because he did not raise it at the earliest opportunity, at the suppression hearing itself. We granted the SPA's petition in order to address both questions. Because we reject the implicit premise of the SPA's second ground for review, however, we need not reach her first ground for review. We believe, on the facts of the instant case, that the appellant adequately preserved his complaint with respect to Skotnik's qualifications in the trial court. We therefore find it unnecessary to decide in this case whether it would be appropriate to overrule the line of cases that informed our dicta in *Davis*.

**ANALYSIS**

Under Rule 33.1(a)(1) of the Texas Rules of Appellate Procedure, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint

was made to the trial court by a timely request, objection, or motion[.]"[20] The requirement of a timely trial-level complaint is satisfied "if the party makes the complaint as soon as the grounds for it become apparent[.]"[21] Typically this means "as soon as the [objecting party] knows or should know that an error has occurred."[22] Conversely, "[i]f an objectionable event occurs before a party could reasonably have foreseen it, the omission of objection will not prevent appellate review."[23] Moreover, strict timeliness of a complaint may not be quite "as crucial" in proceedings before a judge (as opposed to a jury), since a judge is presumed to be able to disregard those matters he deems, in his capacity as legal arbiter, to be inappropriate for consideration in his role as fact-finder.[24] In *Gillenwaters v. State*, we summarized the policies undergirding the timeliness requirement as follows:

> The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case

---

[20] TEX. R. APP. P. 33.1(a)(1).

[21] *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

[22] *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991).

[23] *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004).

[24] *See Garza v. State*, 126 S.W.3d 79, 83 (Tex. Crim. App. 2004) (discussing different application of contemporaneous objection rule in bench trial and jury trial).

to the trier of fact.[25]

As in *Gillenwaters*,[26] we do not think that any of these policies have been compromised by the appellant's failure to object to Skotnik's qualifications until he filed his motion for a new suppression hearing.

In this case, by raising the issue of Skotnik's qualifications in his motion for a new suppression hearing, the appellant provided Judge Cox with an opportunity to correct her error in having appointed an individual who was unqualified to act on her behalf in her court, and thus avoid the very appeal that is before us. Moreover, the State was given an opportunity to respond, and did respond. Nothing about the presentation of the issue at this stage of the pre-trial proceedings hampered the effective presentation of the case to the fact-finder—the appellant pled guilty on the same day that his motion for a new suppression hearing was denied (contingent, of course, on his being allowed to appeal the issue). The only argument we can imagine why an objection lodged at the time of the suppression hearing would have been important is predicated upon a strict notion of judicial economy; had the appellant objected at that time, Skotnik would have had an opportunity to sustain the objection, thus obviating the unauthorized hearing and saving the parties the burden of duplicating their efforts in a new suppression hearing. But "[p]reservation of error does not

---

[25] *Gillenwaters*, *supra*.

[26] *Id*. at 538.

require that action be requested from the trial court until the basis for relief has become apparent."[27] There is no indication in the record that the appellant was ever served with either the order appointing Skotnik that was dated October 28[th] or the order appointing Skotnik that was dated December 2[nd] (the latter of which was not even placed in the court's file until Judge Cox first learned of the appellant's motion for a new suppression hearing). When he arrived for the hearing on December 2[nd], the appellant had no apparent basis even to anticipate Skotnik's presence on the bench, much less to question Skotnik's qualifications to be there. We are loathe to construe Rule 33.1(a)(1) in such a way as to require the appellant to make such a blind objection in order to preserve error for appeal, even in the name of judicial economy.[28]

---

[27]

George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 53:60, at 1029 (3rd ed. 2011), citing *Crane v. State*, 786 S.W.2d 338, 348 (Tex. Crim. App. 1990) (failure to object to violation of discovery order until after cross-examination of witness whose testimony revealed the violation was nevertheless timely because the defendant was trying to develop through that cross-examination exactly the extent of the violation), and *Johnson v. State*, 878 S.W.2d 164, 167-69 (Tex. Crim. App. 1994) ("[A] complaint is not waived as to evidence which is properly admitted but for which the ground of inadmissibility later arises.").

[28]

In dissent, Judge Hervey argues that, even if the appellant could not have known to object at the suppression hearing itself, or immediately thereafter, he has still procedurally defaulted any complaint as to Skotnik's qualifications because he waited several months to file his motion for a new suppression hearing, and thus he did not avail himself of the earliest opportunity to lodge his complaint. Dissenting opinion, at 8-12. We think this is too draconian an application of Rule 33.1(a)(1). TEX. R. APP. P. 33.1(a)(1). The rule requires "a timely request, objection, or motion[,]" but it does not define "timely." For purposes of in-court proceedings, we have typically declared a complaint to be timely only if made at the earliest opportunity once a basis for complaint becomes apparent. *See* notes 21 & 22, *ante*. But with respect to out-of-court pre-trial complaints, such a construction of "timely" will not invariably make sense. The timeliness of many pre-trial complaints is governed by Article 28.01, Section 2. TEX. CODE CRIM. PROC. art. 28.01, § 2. This provision

Moreover, this is not a case in which the appellant waited to raise his complaint for the first time on appeal or in a post-conviction proceeding. True, the appellant did not object at the motion to suppress hearing. But that hearing was conducted before an individual who the appellant contends had no authority—and by statute, *could not* have had the authority—to rule in the first place. If the appellant is correct about this—the court of appeals held that he

requires that certain enumerated pre-trial matters be "raised or filed seven days before" any scheduled pre-trial hearing. *Id*. Even then, the trial court may entertain a later "raised or filed" pre-trial matter "for good cause shown[.]" *Id*. Application of the "earliest opportunity" timeliness principle in this context would thwart the statutory scheme for addressing pre-trial matters. For example, notwithstanding Article 28.01, Section 2, a defendant who fails to file a motion to quash an indictment within a short time after being served with it, as required by the provisions of Chapter 25 of the Code of Criminal Procedure, would procedurally default any complaint—*even if he filed his motion to quash at least seven days prior to a scheduled pre-trial hearing. See also* TEX. CODE CRIM. PROC. art. 1.14(b) (defendant must object to defect of form or substance of an indictment before date of trial to preserve error for appeal, although trial court may require earlier objection in keeping with Article 28.01). After all, it should not take the defendant very long to determine that there may be defects of form or substance in the indictment. Questions of procedural default are systemic, meaning that a court of appeals may not reverse a conviction without first addressing any potential issue of procedural default, even *sua sponte. E.g.*, *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). Strict application of the "earliest opportunity" timeliness principle in the pre-trial context would regularly embroil the courts of appeals in the daunting task of having to determine, as Judge Hervey herself phrases it, *see* Dissenting Opinion, at 11-12, "the exact moment in time that" defendants should have realized that their indictments were defective and filed their motions to quash.

The particular pre-trial motion that the appellant filed here is not one that is expressly covered by Article 28.01. But we should not rely on that circumstance as justification to treat his motion any differently than we would treat other pre-trial matters in construing Rule 33.1(a)(1)'s timeliness requirement. During the approximately three-month period between the suppression hearing (December 2, 2009) and the hearing that Judge Cox convened to rule on the appellant's motion for a new suppression hearing and (having denied that) to accept his plea (March 8, 2010), the docket reveals no *other* court setting at which the appellant could have obtained a ruling. Under these circumstances, we regard the appellant's pre-trial motion to set aside Skotnik's ruling on the suppression motion and to conduct a new suppression hearing as timely. Judge Cox obviously did too, for she denied it on the merits.

was,[29] and we did not grant discretionary review of that question—then it is at least arguable that Skotnik had no authority even to rule that he had no authority! The appellant's motion to set aside Skotnik's orders on the motions to suppress was his first opportunity to obtain a ruling from an individual—the sitting judge of the constitutional county court—who unquestionably had authority to rule for the court. And Judge Cox *did* rule on the merits of the appellant's motion to set aside the order denying the motion to suppress. A ruling denying a motion to suppress evidence constitutes an interlocutory order,[30] and a trial court may reexamine its ruling on a motion to suppress at any time prior to or during trial.[31] By entertaining the appellant's motion to set aside Skotnik's unauthorized rulings on the motions to suppress, Judge Cox essentially did just that. When she ruled on the merits of the appellant's motion to set aside the earlier rulings on the motions to suppress, she issued a timely and specific ruling from which the appellant could later appeal. Even if Skotnik's unauthorized orders on the motions to suppress were merely voidable, not void, it is clear enough that the appellant challenged Skotnik's authority in a timely manner in the trial court

---

[29]

*Lackey*, *supra*, at 867.

[30]

*State v. Stevens*, 261 S.W.3d 787, 792 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *State v. Henry*, 25 S.W.3d 260, 262 (Tex. App.—San Antonio 2000, no pet.).

[31]

*Black v. State*, __ S.W.3d __, 2012 WL 540090, at *5-6 (No. PD-1551-10, Tex. Crim. App., delivered Feb. 15, 2012). *See Montalvo v. State*, 846 S.W.2d 133, 138 (Tex. App.—Austin 1993, no pet.) ("The trial court had continuing jurisdiction over the case and was free to reconsider its own earlier suppression ruling.").

and obtained an appealable ruling thereon. We decline to invoke Rule 33.1 to hold otherwise.

"The standards of procedural default," we have admonished, "are not to be implemented by splitting hairs in the appellate courts."[32] Albeit in the context of talking about the required *specificity* of objections under the predecessor to Rule 33.1, we observed in *Lankston v. State* that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him *at a time when the trial court is in a proper position to do something about it.*"[33] In *Wilson v. State*, we made it clear that an objection to the authority of the individual purporting to conduct a proceeding must be timed so as to "afford both the trial judge and the State notice of the procedural irregularity and an adequate opportunity to take appropriate corrective action."[34] By raising the issue of Skotnik's authority to preside in the place of Judge Cox in his motion to set aside the orders on the motions to suppress, the appellant in this case notified both the trial court and the State of the irregularity. Because Judge Cox was authorized to revisit the motions to suppress at any time during the pretrial proceedings, she was in a position to take corrective action by ruling on

---

[32] *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

[33] *Id*. (emphasis added).

[34] 977 S.W.2d 379, 380-81 (Tex. Crim. App. 1998).

the merits of the appellant's motion to set aside the rulings on the motions to suppress.

In urging us nevertheless to hold that the appellant failed to preserve error, the SPA relies upon *Janecka v. State*.[35] That is understandable because the facts of *Janecka* are somewhat similar to those presented in this case. But we think that *Janecka* is factually distinguishable. *Janecka* was a direct appeal to this Court in a capital-murder case.[36] Having found error in the trial court's denial of Janecka's motion to quash the indictment, we remanded the cause to the trial court to conduct a hearing to allow Janecka the opportunity to demonstrate harm.[37] The trial court appointed a special master to preside over this hearing.[38] For the first time on appeal, the State raised a question about the trial court's authority to appoint a special master for the purpose of conducting such a hearing.[39] Ultimately, in *Janecka*, the trial court never ceded its authority to the special master. It was the trial court that entered findings of fact and conclusions of law to this Court following the

---

[35] 823 S.W.2d 232 (Tex. Crim. App. 1990).

[36] *Id*. at 233 (opinion on original submission).

[37] *Id*. at 233-34; *id*. at 243 (opinion on reh'g).

[38] *Id*. at 243 (opinion on reh'g).

[39] *Id*.

hearing.[40]  The State never made any objection in the trial court;[41] thus, it never raised the issue of the authority of the trial court's proxy at any time at which the trial court judge could take corrective measures.  Here, the appellant did.

It is true that we said in *Janecka*, in keeping with Rule 33.1's predecessor, that "to preserve the issue of appointment of a master, a party must specifically object to the judge making the appointment.  The objection must be made at the time of the appointment or at the earliest feasible opportunity thereafter."[42]  The appellant in the instant case did not object to Skotnik's authority at the time of the suppression hearing itself.  But, unbeknownst to the appellant, Judge Cox had signed an order on the very morning of the suppression hearing ceding her authority to the municipal-court judge.  She was not present at the hearing to rule on any objection the appellant may have made on that date to Skotnik's eligibility to preside in her place.  She could, of course, have later adopted the municipal-court judge's ruling as her own, just as the trial court in *Janecka* apparently adopted the special master's proposed findings and conclusions.  But she could also have entertained a motion to revisit that ruling,

---

[40]

   *Id*.

[41]

   *Id*.

[42]

   *Id*. at 244 (construing former TEX. R. APP. P. 52(a)).  But elsewhere in the opinion we indicated that we "might" have reached the merits of the State's claim had it been raised "on [original] submission before this Court," instead of for the first time in a motion for rehearing following our disposition of the case after remand.  *Id*. at 243.  This suggests that the State may have adequately preserved error by objecting to the special master's appointment at any time during the proceedings in the trial court on remand.

held it to be voidable for lack of authority to appoint the municipal-court judge to preside in her place, and conducted a new suppression hearing. We therefore agree with the court of appeals that, notwithstanding our holding in *Janecka*, the appellant in this case made a timely objection to the municipal-court judge's authority when he filed a subsequent motion to set aside the rulings on his motions to suppress.[43] He obtained a ruling on the merits of that objection. To apply *Janecka* to deprive him of an efficacious appeal of that ruling constitutes the kind of hair-splitting we disowned in *Lankston*.[44]

## CONCLUSION

Whether Skotnik's orders denying the appellant's motions to suppress were void or merely voidable, the appellant timely challenged them in the trial court, and the county court judge had the authority to rule—and did rule—on the merits of the appellant's motion to set those orders aside. Having upheld that ruling on appeal, the court of appeals correctly reversed the judgment of the trial court and remanded the cause for further proceedings, presumably to include a new hearing on the appellant's motions to suppress conducted before

---

[43]

    *Lackey*, *supra*, at 867-68 (distinguishing *Janecka*).

[44]

    *Lankston*, *supra*, at 909. Indeed, given that the appellant's negotiated guilty plea was expressly conditioned on his right to appeal the issue of Skotnik's qualifications and Judge Cox's refusal to conduct a new suppression hearing, a ruling that any such error was not preserved could potentially impugn the voluntariness of his plea, opening the door to possible post-conviction habeas corpus relief. *See*, *e.g.*, *Wooten v. State*, 612 S.W.2d 561, 563 (Tex. Crim. App. 1981) ("As a matter of constitutional law a guilty plea cannot be said to have been voluntary if it was induced by an agreement, approved by the court, that a question could be appealed when that agreement cannot be fulfilled.").

an individual who is actually qualified to entertain it on behalf of the trial court.  We affirm

the judgment of the court of appeals.


DELIVERED:          March 7, 2012
PUBLISH